Carrington J„
delivered the opinion of the Court.
The Act of 1779, gives a preference to original settlers, and so did the Loyal Company. The Act grants to such settlers 400 acres including their settlement, and a pre-emption of 600 acres adjoining, if such lands can be found, to which no other person has a legal right. The Chancellor is mistaken when he likens this to the case of Maze v. Hamilton.* If the cases were alike, as he states them to be, this Court would have established the present decree w’ithout a dissenting1 voice ; and notwithstanding the criticisms that hate been passed upon that decision, this Court opon a revision of that case consider it to have been determined in strict conformity with the law, and agreeably to the principles of Equity. But how was *61 the case of Maze v. Hamilton ? Maze’s settlement was in 1764 ; Hamilton’s not until 1770. Maze con- c stantly asserted his claim of settlement right. In June 1775, Hamilton surveyed 1100 acres including Maze’s settlement, and pending the dispute got out his patent. This Act of 1779, establishes the right of prior settlers, and gives pre-emption, when vacant lands are to be found adjoining. Though in that case the settlement was Maze’s, yet the adjoining lands, which would otherwise have been for pre-emption, were not vacant, having been surveyed by Hamilton under the authority of the Greenbrier Company, anterior to the Act of 1779. This Court therefore considered that Maze had a right to his settlement, and Hamilton, having a right prior to that, under the law of 1779, was entitled to the remainder of his patent, and so determined it, with liberty to Maze to survey his pre-emption zvheresoever else he could find vacant land, and reversed the decree. What is this case? Culbertson proves his prior settlement incontestably, in which is included Parlor?s survey. Burnsides, not till 1786, (long after the determination in favor of Held in the General Court,) made his survey, and fraudulently obtained his patent for the settlement, and for pre-emption in the vacant lands adjoining. Until then, we hear of no title in the adjoining lands in any body. Therefore his parent was founded upon a rotten foundation, (so far as it included the settlement and pre- eruption,) it being upon the judgment of the Commissioners, v hich was declared void by the General Court. An attention to dates will point out the distinction between the two cases. In the case at bar, the pre-emption of Samuel Culbertson is made to yield to the patent of Burnsides, although the lands adjacent to Culbertson’s prior settlement, were vacant at the time of the judgment of the General Court in 1784, establishing Culbertson’s settlement and pre-emption. Burnside’s survey was not made, nor his patent obtained til! 1786, and that by fraud, imposing on the agent of the Loyal Company, the Commissioners c.er *62 tificate in 1781, which had been vacated by the General Court.
The decree of the High Court of Chancery is therefore erroneous in this, that after setting aside Burn-sides’ patent for fraud, so far as it comprehended the lands adjudged by the General Court in 1784, to Samuel Culbertson for his settlement right, it makes the pre-emption claim of the said Culbertson, founded on the said judgment, yield to the patent of the said Burnsides, which was not obtained until 1786, upon a survey made in that year.
The decree is to be reversed, and it is now decreed, that a survey be made of 400 acres for Culbertson’s settlement right, and 600 acres adjoining, which may be laid down as either party may require, to enable the Court of Chancery to determine as to the reasonableness of the location; that the patent to .Burnsides be also surveyed and laid down to shew how much it includes of the 1000 acres. And when this shall be adjusted, the Court doth adjudge &c., that Burnsides do convey to the said A. Reid the inheritance of so much of the 1000 acres as shall be found to lie within the bounds of Burnsides’ patent, with warranty against himself and all claiming under him, and deliver possession thereof upon his paying to the said Burnsides at the rate of 3l. per hundred acres, for the quantity so to be conveyed : that as to those 1000 acres, the bill of Burnsides be dismissed, and as to the residue of the lands contained in the patent, that the bill of Reid be dismissed, and that Burnsides pay costs in each suit in the High Court of Chancery.
*63 CASES DETERMINED 5N THE COURT OF APPEALS, IN’ APRIL TERM, 1795.

 See Appendix,